1
2
3
4
5

**LAQUER, URBAN, CLIFFORD & HODGE LLP**
Marija Kristich Decker, State Bar No. 207387
Email: Decker@luch.com
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882
Facsimile: (626) 449-1958

6
7

Counsel for Plaintiffs, Trustees of the Southern
California Pipe Trades Health and Welfare Trust Fund, et al.

8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES HEALTH AND WELFARE TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES RETIREMENT TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES DEFINED CONTRIBUTION TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES VACATION AND HOLIDAY TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES CHRISTMAS BONUS FUND; TRUSTEES OF THE APPRENTICE AND JOURNEYMAN TRAINING TRUST FUND; TRUSTEES OF THE SOUTHERN CALIFORNIA PIPE TRADES PENSIONERS AND SURVIVING SPOUSES HEALTH FUND; TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, and, TRUSTEES OF THE INTERNATIONAL TRAINING FUND, | CASE NO.:  2:17-cv-06184<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF COLLECTIVE BARGAINING AGREEMENT AND RELATED TRUST AGREEMENTS;**<br><br>2. **VIOLATION OF § 515 OF ERISA;**<br><br>3. **BREACH OF ERISA FIDUCIARY DUTIES;**<br><br>4. **ENGAGING IN PROHIBITED TRANSACTIONS;**<br><br>5. **BREACH OF CONTRACT – MASTER AGREEMENT and NATIONAL DISTRIBUTION AGREEMENT; and**<br><br>6. **CONVERSION** |
| Plaintiffs, | |
| v. | |
| NPL CONSTRUCTION CO., a Nevada corporation; and DOES 1-100, inclusive, | |
| Defendants. | |

1162987

Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, Trustees of the Southern California Pipe Trades Retirement Trust Fund, Trustees of the Southern California Pipe Trades Defined Contribution Trust Fund, Trustees of the Southern California Pipe Trades Vacation and Holiday Trust Fund, Trustees of the Southern California Pipe Trades Christmas Bonus Fund, Trustees of the Apprenticeship and Journeyman Training Trust Fund, Trustees of the Southern California Pipe Trades Pensioners and Surviving Spouses Health Fund, Trustees of the Plumbers and Pipefitters National Pension Fund, and Trustees of the International Training Fund, complain and allege:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this case pursuant to § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to § 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA.  Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in § 502(f) of ERISA [29 U.S.C. § 1132(f)].

2.      This Court also has jurisdiction of this case pursuant to § 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") [29 U.S.C. § 185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3.      Venue is proper in this Court pursuant to § 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and § 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Plaintiffs' trust funds are administered, in which the relevant acts took place, and in which moneys are due and payable.

1    4.    To the extent this Complaint sets forth any state law claims, this Court has

2    supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

3                                        **PARTIES**

4    5.    Plaintiffs are the Trustees of the Southern California Pipe Trades Health

5    and Welfare Trust Fund, Trustees of the Southern California Pipe Trades Retirement

6    Trust Fund, Trustees of the Southern California Pipe Trades Defined Contribution Trust

7    Fund, Trustees of the Southern California Pipe Trades Vacation and Holiday Trust

8    Fund, Trustees of the Southern California Pipe Trades Christmas Bonus Fund, Trustees

9    of the Apprentice and Journeyman Training Trust Fund, Trustees of the Southern

10   California Pipe Trades Pensioners and Surviving Spouses Health Fund, Trustees of the

11   Plumbers and Pipefitters National Pension Fund, and Trustees of the International

12   Training Fund (hereinafter the "Trustees").   The Trusts are express trusts created

13   pursuant to written declarations of trust (hereinafter "Trust Agreements") between the

14   Southern California Pipe Trades District Council No. 16 (hereinafter "District Council

15   No. 16") of the United Association of Journeymen and Apprentices of the Plumbing

16   and Pipefitting Industry (hereinafter "United Association") and various employer

17   associations in the plumbing and pipefitting industry in Southern California, or between

18   District Council No. 16 and other councils of the United Association of Plumbers and

19   Pipefitters and various employer associations across the United States.  The Trusts are

20   now, and were at all times material to this action, labor-management multiemployer

21   trusts created and maintained pursuant to § 302(c)(5) of the LMRA, [29 U.S.C. §

22   186(c)(5)].

23   6.    The Trustees, as trustees of the Trusts, are "*fiduciar[ies]*" with respect to

24   the Trusts as defined in § 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)].

25   7.    Defendant, NPL Construction Co. (hereinafter "NPL"), is a corporation

26   organized pursuant to the laws of the state of Nevada with its principal place of business

27   in Phoenix Arizona, which is qualified for the transaction of intrastate business in the

28   ///

1  state of California.  NPL performs construction services throughout the state of
2  California, including the installation of natural gas distribution systems.

3      8.    SW Administrators, Inc. is a corporation organized pursuant to the laws of
4  the state of Nevada with its principal place of business in Phoenix Arizona.  SW
5  Administrators, Inc. is a wholly owned subsidiary of NPL.  During all relevant times
6  herein, SW Administrators, Inc. performed construction services, including the
7  installation of natural gas distribution systems throughout the state of California.

8                    **COLLECTIVE BARGAINING**
9           **AGREEMENT AND STATUS OF PARTIES**

10      9.    On or about September 12, 2012, Duane Stott, on behalf of SW
11  Administrators, Inc., executed and delivered a written agreement ("2011 Agreement")
12  to District Council No. 16, whereby SW Administrators, Inc. agreed to be bound by the
13  terms and conditions, with certain exceptions, of the written and existing Master
14  Agreement for the Plumbing and Piping Industry of Southern California, in effect
15  between the District Council No. 16 and the Southern California Contractors, a
16  multiemployer association, for the period 2011 through 2014, and to the related Trust
17  Agreements.

18      10.    On or about June 13, 2014, Duane Stott, on behalf of SW Administrators,
19  Inc., executed and delivered a written agreement ("2014 Contract Extension") to
20  District Council No. 16, whereby SW Administrators, Inc. agreed to extend the 2011
21  Agreement for the Plumbing and Piping Industry of Southern California to June 2018,
22  and agreed to continue to be bound to the related Trust Agreements.  The 2011
23  Agreement and the 2014 Contract Extension are referred to collectively as the "Master
24  Agreement."

25      11.    On or about May 17, 2013, Duane Stott, on behalf of SW Administrators,
26  Inc., delivered a written agreement called the California State Addendum to the
27  National Distribution Agreement ("2013 California Addendum") to District Council
28  No. 16, whereby SW Administrators, Inc. agreed to be bound by the terms and

conditions, with certain exceptions, to the National Distribution Agreement, in effect between the Distribution Contractors Association ("DCA") and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO ("Union"), as modified by the parties from time to time, and as modified by the California State Addendum for covered work performed in California.

12.     On or about January 1, 2016, NPL voluntarily assumed and accepted and agreed to be bound by all of SW Administrator, Inc.'s agreements, including but not limited to the 2011 Agreement, the 2014 Contract Extension, the 2013 California Addendum and the relevant Trust Agreements.

13.     On or about April 25, 2016, Darrell Roth, on behalf of NPL, executed and delivered a written agreement called the California State Addendum to the National Distribution Agreement ("2016 California Addendum") to District Council No. 16, whereby NPL agreed to be bound by the terms and conditions, with certain exceptions, to the National Distribution Agreement, in effect between the Distribution Contractors Association ("DCA") and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL-CIO ("Union"), as modified by the parties from time to time and as modified by the California State Addendum for covered work performed in California.  The 2013 California Addendum, the 2016 California Addendum and the United Association National Distribution Agreement referenced herein are referred to collectively as the "National Distribution Agreement."  NPL also agreed to be bound by the related Trust Agreements.  NPL has not terminated the National Distribution Agreement.

14.     Trustees are informed and believe, and based thereon allege, that all times relevant to this action, NPL was bound to one or more collective bargaining agreements that require NPL to pay contributions to the Trusts.

15.     The Master Agreement and the National Distribution Agreement incorporate by reference the terms and provisions of the Trust Agreements.

1162987

16.     Trustees are informed and believe, and based thereon allege, that to avoid paying contributions, benefits and/or withholdings and in violation of the Master Agreement, National Distribution Agreement, related Trust Agreements, and section 515 of ERISA, [29 U.S.C. § 1145], one or more individuals or entities, diverted or redirected employees and/or business affairs, assets or operations between one or more individuals and/or entities.  Trustees are informed and believe, and based thereon allege, that the individuals and/or entities are presently unknown to Trustees.  If Trustees ascertain that the defendants or others have engaged in such activities, Trustees will seek leave to amend this Complaint to include such individuals and entities as defendants.

17.     Trustees are informed and believe, and based thereon allege, that NPL is an "*employer*" as that term is understood in the Master Agreement, National Distribution Agreement, and related Trust Agreements.

18.     Trustees are informed and believe, and based thereon allege, that NPL is an "*employer*" as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)]*,* and, therefore, NPL is "*obligated to make contributions to a multiemployer plan"* within the meaning of section 515 of ERISA [29 U.S.C. § 1145].  Trustees are informed and believe, and based thereon allege, that NPL is also an "*employer*" engaged in "*commerce*" in an "*industry affecting commerce,"* as those terms are defined and used in §§ 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1) and 142(3)], and within the meaning and use of § 301(a) of the LMRA [29 U.S.C. § 185(a)].

## POSSIBLE ADDITIONAL DEFENDANTS

19.     The Trustees are currently unaware of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said DOE defendants by such fictitious names.  When the Trustees subsequently ascertain the true identities of the one or more individuals, or other entities, who are responsible, in whole or in part, for the day-to-day operations of NPL and/or is responsible, in whole or in part, for all, or a majority of, the decisions pertaining to the payment of fringe benefit

1   contributions, or union dues, to the Trusts, including decisions: i) whether or not to pay

2   such contributions or dues, ii) if payment is to be made, when to pay such contributions

3   or dues, and/or iii) how to use such funds pending payment to the Trustees, Trustees

4   will seek to amend this Complaint to include the true names and capacities of said DOE

5   defendants when such information has been obtained.

6                        **FIRST CLAIM FOR RELIEF**

7   **BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND**

8                      **RELATED TRUST AGREEMENTS**

9                            **(Against NPL)**

10       20.    Trustees hereby incorporate herein by this reference paragraphs 1 through

11   19 above, inclusive of any and all subparagraphs, to the same effect as if set forth

12   verbatim.

13       21.    Trustees are informed and believe, and based thereon allege, that by the

14   terms and provisions of the Master Agreement, National Distribution Agreement and

15   related Trust Agreements, and at all times material herein, NPL agreed, and was

16   obligated, to the following:

17       21.1. Prepare and submit true, complete and accurate written monthly

18   contribution reports to the Trusts on a timely basis showing: i) the identities of

19   employees performing work covered by the Master Agreement and the National

20   Distribution Agreement, ii) the number of hours worked by these employees, iii) the

21   rates of pay, iv) character of hours worked (e.g., straight time, over-time, etc.), and v)

22   based upon the hours worked or amounts paid to employees, the proper calculation of

23   the fringe benefit contributions, benefits and/or withholdings attributable to the same

24   employees.   Such monthly contribution reports are due on the 10th day of each

25   successive month;

26       21.2. Pay to the Trusts fringe benefit contributions, benefits and/or

27   withholdings on a monthly basis, and at specified rates for each hour worked by

28   applicable employees.  These amounts are considered delinquent if not received by the

1  Trusts by the 15th of the month succeeding the month in which the work was performed.

2  These amounts are due and payable at the Trusts' administrative offices in Los Angeles,

3  California; and

4          21.3.   Permit the Trustees and their agents to conduct audits of payroll and

5  related records in order to determine if fringe benefit contributions have been properly

6  paid pursuant to the Master Agreement, National Distribution Agreement, and related

7  Trust Agreements.

8          22.    Trustees are informed and believe, and based thereon allege, that all

9  conditions, covenants and promises required to be performed as conditions precedent

10  for NPL's performance under the Master Agreement, the National Distribution

11  Agreement, and related Trust Agreements have been properly performed.

12          23.    For the months of July 1, 2013, through May 31, 2017, based upon the

13  monthly reports submitted by NPL to the Trusts, NPL underpaid its contributions in the

14  amount of at least $329,978.13.  To date, the shortages in contributions remain unpaid.

15          24.    The Trustees are informed and believe, and based thereon allege, that NPL

16  owes, but has failed to pay, fringe benefit contributions in amounts not presently known

17  to the Trustees, but these additional amounts will be established by proof at the trial

18  herein.

19          25.    Trustees are informed and believe, and based thereon allege, that there is

20  no legal excuse for NPL's breach of the Master Agreement, the National Distribution

21  Agreement, and the related Trust Agreements.

22          26.    As of the date of filing this Complaint, Trustees are informed and believe,

23  and based thereon allege, that NPL is "*delinquent*," as that term is used in the Master

24  Agreement, the National Distribution Agreement, and/or related Trust Agreements.

25          27.    Pursuant to the Master Agreement, the National Distribution Agreement,

26  and section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)(c)], NPL is obligated to pay

27  to the Trustees liquidated damages for the detriment caused by the failure of NPL to

28  pay fringe benefit contributions in a timely manner.  The parties to the Master

1 Agreement have delegated to the Trustees the authority to promulgate rules and
2 regulations relating to the collection of delinquent contributions.  Pursuant to this
3 authority, the Trustees have promulgated the written Joint Collection Policies and
4 Procedures ("Collection Procedures").  Pursuant to the Master Agreement and the
5 Collection Procedures, liquidated damages are to be assessed at ten percent (10%) of
6 the unpaid or untimely contributions.  However, if a lawsuit is filed to collect the
7 contributions, the Collection Procedures require NPL to pay liquidated damages
8 assessed at twenty percent (20%) of the unpaid or untimely contributions.  Pursuant to
9 the National Distribution Agreement, NPL agreed to be bound by all the rules,
10 regulations, policies and procedures adopted by the Trustees for the collection of
11 delinquent contributions and other amounts owed to the Trusts.

12    28.    For the period July 1, 2013, through May 31, 2017, NPL failed to pay
13 liquidated damages of at least $65,995.63, calculated at 20% of the unpaid
14 contributions.  The total amount of liquidated damages will be established by proof at
15 the trial herein.

16    29.    Pursuant to the Master Agreement, National Distribution Agreement, the
17 Trust Agreements, and Collection Procedures, NPL owes the Trustees a $200.00 late
18 fee each time it failed to timely submit monthly reports.  NPL failed to timely submit
19 monthly reports during the time period of July 1, 2013, through May 31, 2017, and owes
20 late fees of at least $2,000.00.  The amount of late fees will be established by proof at
21 the trial herein.

22    30.    Pursuant to the Master Agreement, National Distribution Agreement,
23 Trust Agreements, Collection Procedures and section 502(g)(2)(B) of ERISA [29
24 U.S.C. § 1132(g)(2)(B)], NPL owes the Trustees interest at eighteen percent (18%) per
25 annum on all unpaid fringe benefit contributions from the dates the sums were originally
26 due to the Trustees until paid.  The amount of interest will be established by proof at
27 the trial herein.

28 ///

31.     By the Master Agreement, National Distribution Agreement,  Collection Procedures, and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)], NPL agreed that in the event of any delinquency, it would pay all legal and auditing costs in connection therewith, whether incurred before or after litigation is commenced.

32.     It has been necessary for the Trustees to engage legal counsel and incur auditing costs for the purpose of collecting said contributions and damages, and the Trustees are entitled to their reasonable attorneys' fees and audit costs in connection therewith.  The exact amount of the legal fees and audit costs due and payable has not been ascertained at this time.  These amounts shall be established by proof at the trial herein.

33.     By the Master Agreement, National Distribution Agreement, and Trust Agreements, NPL agreed in the event it failed to pay fringe benefit contributions or otherwise comply with the terms and provisions of the Master Agreement and related Trust Agreements, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees, in an amount based upon a calculation set forth in the Master Agreement and National Distribution Agreement.  Trustees are informed and believe, and based thereon allege, that the Trustees are entitled to such good faith deposit and delivery of monies or bond from NPL.  The amount of the good faith deposit or bond will be established by proof at the trial herein.

34.     Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], the Court may grant such other legal or equitable relief as the Court deems appropriate.  As part of Trustees' judgment, Trustees shall also request the Court to:

34.1.  Order NPL and its representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

///

///

COMPLAINT

1162987

34.2.   Order NPL and its representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees, in an amount determined by the Court to be appropriate;

34.3.   Order the creation of a constructive trust on all applicable property, and order the transfer of the applicable property to the Trustees; and

34.4.   Order NPL and its representatives, agents and associates, to pay to the Trustees all amounts due the Trusts, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF § 515 OF ERISA
## (Against NPL)

35.     Trustees hereby incorporate herein by this reference paragraphs 1 through 34 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

36.     Section 515 of ERISA [29 U.S.C. § 1145], provides *"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."*

37.     NPL is an *"employer"* as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and is *"obligated to make contributions to a multiemployer plan"* within the meaning and use of section 515 of ERISA [29 U.S.C. § 1145].

38.     Trustees are informed and believe, and based thereon allege, that all conditions, covenants and promises required to be performed as conditions precedent for NPL's performance under section 515 of ERISA [29 U.S.C. § 1145], have been properly performed.

///

39.     Trustees are informed and believe, and based thereon allege, that on or about August 15, 2013, and thereafter, NPL violated its statutory mandated obligation to timely pay fringe benefit contributions to the Trusts.  Trustees are informed and believe, and based thereon allege, that there is due and payable from NPL the fringe benefit contributions referenced in paragraph 23 hereinabove.

40.     Trustees are informed and believe, and based thereon allege, that there is no legal excuse for NPL's violation of section 515 of ERISA [29 U.S.C. § 1145].

41.     Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan: i) the unpaid contributions, ii) interest on the unpaid contributions, iii) an amount equal to the greater of a) interest on the unpaid contributions or b) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, iv) reasonable attorneys' fees and costs, and v) such other legal or equitable relief as the Court deems appropriate.  For purposes of section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under § 6621 of the Internal Revenue Code of 1986, as amended, [26 U.S.C. § 6621].   The exact amount of the unpaid contributions, benefits, withholdings, damages, reasonable attorneys' fees, court costs, interest, liquidated damages and other expenses allowed by federal statute has not been ascertained at this time.  These amounts shall be established by proof at the trial herein.

42.     As part of the judgment to be entered herein, Trustees shall also request the relief set forth in paragraph 34 hereinabove.

///

///

///

///

# THIRD CAUSE OF ACTION
## BREACH OF ERISA FIDUCIARY DUTIES
### (Against NPL and DOES)

43.     Trustees hereby incorporate herein by this reference paragraphs 1 through 42 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

44.     A portion of the fringe benefit contributions required to be paid by NPL to the Trusts are monies funded exclusively by contributions from participating employers, without deduction from the covered employees' paychecks.  The remaining portion of the fringe benefit contributions required to be paid by NPL to the Trusts are monies funded exclusively by deductions from covered employees' compensation. NPL granted one or more of its representatives, employees or others access to all contributions.

45.     Trustees are informed and believe, and based thereon allege, that perhaps one or more individuals, are each an officer, director, controlling shareholder and beneficial owner of NPL and, as such, each accrues a direct beneficial and pecuniary interest in the activities and, ultimately, the success of NPL.  Trustees are informed and believe, and based thereon allege, one or more others are responsible for the day-to-day operations of NPL and the same defendants are responsible for all, or a majority of, the decisions pertaining to the payment of contributions to the Trusts, including decisions: a) whether or not to pay such contributions, b) if payment is to be made, when to pay such contributions, and c) how to use such contribution funds pending payment to the Trusts.

46.     Section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)], provides that "*a person [or entity] is a fiduciary with respect to a plan to the extent (i) he . . .  exercises any discretionary authority or control respecting . . . disposition of its assets . . .*"  The employee contributions payable by NPL to the Trusts were fund "*assets*" as defined in the Trust Agreement and as defined in ERISA.  Trustees are informed and believe, and

1    based thereon allege, that one or more or all of defendants exercised discretionary

2    authority or control respecting fund "*assets.*"  Trustees are informed and believe, and

3    based thereon allege, that one or more or all of defendants were, and are, an unnamed

4    "*fiduciary*" pursuant to section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)], and

5    thereby individually, and separately from NPL, obligated to the provisions and

6    obligations provided for under ERISA.

7         47.    Section 404(a)(1)(A) of ERISA [29 U.S.C. § 1104(a)(1)(A)] provides that

8    "*a fiduciary shall discharge his duties with respect to a plan solely in the interest of the*

9    *participants and beneficiaries and--¶ (A) for exclusive purpose of: (i) providing benefits*

10   *to participants and their beneficiaries; and . . . (D) in accordance with the documents*

11   *and instruments governing the plan . . . ."*  Section 403(c)(1) of ERISA [29 U.S.C. §

12   1103(c)(1)] provides that "*the assets of a plan shall never inure to the benefit of any*

13   *employer and shall be held for the exclusive purposes of providing benefits to*

14   *participants in the plan and their beneficiaries . . . ."*  The specific duties of a fiduciary

15   are that he/she: a) shall ensure that "*assets of the plan never inure to the benefit of the*

16   *employer and shall be held for the exclusive purposes of providing benefits to*

17   *participants in the plan,*" section 403(c)(1) of ERISA [29 U.S.C. § 1103(c)(1)], b)

18   "*shall discharge his duties with respect to a plan solely in the interests of the*

19   *participants,*" section 404(a)(1) of ERISA [29 U.S.C. § 1104(a)(1)], and c) shall not use

20   plan assets in any transaction with "*a party in interest,*" section 406(a)(1) of ERISA

21   [29 U.S.C. § 1106(a)(1)], nor "*in his own interest or for his own account,*"

22   section 406(b)(1) of ERISA [29 U.S.C. § 1106(b)(1)].  ERISA prohibits a fiduciary

23   from making any "*transfer to, or use by or for the benefit of, a party in interest, of any*

24   *assets of the plan.*" Section 406(b)(1)(D) of ERISA [29 U.S.C. § 1106(b)(1)(D)].  *NPL*

25   is a "*party in interest,*" as is any fund fiduciary.  Under ERISA, if a fiduciary uses plan

26   assets to satisfy other business obligations, he violates his fiduciary duty.

27        48.    Trustees are informed and believe, and based thereon allege, that all

28   conditions, covenants and promises required to be performed as conditions precedent

1   for the proper performance under ERISA by defendants have been properly performed

2   or waived.

3        49.     Trustees are informed and believe, and based thereon allege, that NPL

4   breached its fiduciary duties and responsibilities by misuse of employee contributions

5   payable to the Trusts by either: i) diverting the contributions to NPL's sole and

6   exclusive benefit and/or ii) diverting the contributions to NPL's sole and exclusive

7   benefit or indirect benefit, in violation of the Trusts', participants' and beneficiaries'

8   rights under ERISA.  Trustees are informed and believe, and based thereon allege, that

9   such conduct was a breach and violation of ERISA, including, but not limited to, breach

10  of section 404(a)(1)(A) of ERISA [29 U.S.C. § 1104(a)(1)(A)] and section 403(c)(1) of

11  ERISA [29 U.S.C. § 1103(c)(1)].

12       50.     Trustees are informed and believe, and based thereon allege, that there is

13  no legal excuse for NPL's breach.

14       51.     Section 409 of ERISA [29 U.S.C. § 1109(a)] provides that *"[a]ny person*

15  *who is a fiduciary with respect to a plan who breaches any of the responsibilities,*

16  *obligations, or duties imposed upon fiduciaries by this title shall be personally liable to*

17  *make good to such plan any losses to the plan resulting from each such breach, and to*

18  *restore to such plan any profits of such fiduciary which have been made through use of*

19  *assets of the plan by the fiduciary, and shall be subject to such other equitable or*

20  *remedial relief as the court may deem appropriate, including removal of such*

21  *fiduciary."*  Similarly, section 502(g)(1) of ERISA [29 U.S.C. § 1132(g)(1)], provides

22  that *"in any action . . . by a . . . fiduciary, the court in its discretion may allow*

23  *reasonable attorneys' fees and costs of action . . . ."*

24       52.     Trustees are informed and believe, and based thereon allege, as a

25  proximate result of the wrongful acts herein alleged, the Trusts have been damaged in

26  an amount presently unknown.  Trustees are informed and believe, and based thereon

27  allege, that damages are continuing to accrue in an amount presently unknown to

28  Trustees.  The total amounts of these damages shall be established by proof.

53.     As remedies for this breach of fiduciary duty, Trustees also request the Court to grant the relief requested in paragraph 34 hereinabove.

### FOURTH CAUSE OF ACTION
### ENGAGING IN PROHIBITED TRANSACTIONS
### <u>(Against NPL and DOES)</u>

54.     Trustees hereby incorporate herein by this reference paragraphs 1 through 53 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

55.     Trustees are informed and believe, and based thereon allege, that one or more or all of defendants were, and are, an unnamed "*fiduciary*" pursuant to § 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)], and thereby are individually, and separately from NPL, obligated to the provisions and obligations provided for under ERISA.

56.     Section 406(a)(1)(D) of ERISA [29 U.S.C. § 1106(a)(1)(D)], provides that "*a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--¶ (D) transfer to, or use by or for the benefit of, a party in interest [an employer, etc.], of any assets of the plan . . . .*"  Section 406(b)(1) of ERISA [29 U.S.C. § 1106(b)(1)] provides that "*a fiduciary with respect to a plan shall not--¶ (1) deal with the assets of the plan in his own interest or for his own account . . . .*"  NPL and DOES are each a "*party in interest,*" as is any fund fiduciary.  Under ERISA, if a fiduciary uses plan assets to satisfy other business obligations, he/she violates his/her duty.

57.     Trustees are informed and believe, and based thereon allege, that one or more or all of defendants has engaged in prohibited transactions by misuse of employee contributions payable to the Trusts by either: i) diverting the contributions to his/her sole and exclusive benefit and/or ii) diverting the contributions to NPL's sole and exclusive benefit and his/her indirect benefit, in violation of the Trusts', participants', and beneficiaries' rights under ERISA.  Trustees are informed and believe, and based thereon allege, that such conduct was a breach and violation of ERISA, including, but

COMPLAINT

1162987

not limited to, breach of section 406(a)(1)(D) of ERISA [29 U.S.C. § 1106(a)(1)(D)], and section 406(b)(1) of ERISA [29 U.S.C. § 1106(b)(1)].

58.     Section 409 of ERISA [29 U.S.C. § 1109(a)] provides that *"[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."*  Similarly, section 502(g)(1) of ERISA [29 U.S.C. § 1132(g)(1)], provides that *"in any action . . . by a . . . fiduciary, the court in its discretion may allow reasonable attorneys' fees and costs of action . . . ."*

59.     Trustees are informed and believe, and based thereon allege, as a proximate result of the wrongful acts herein alleged, the Trusts have been damaged in an amount presently unknown.  Trustees are informed and believe, and based thereon allege, that damages are continuing to accrue in an amount presently unknown to Trustees.  The total amounts of these damages shall be established by proof.

60.     As remedies for the prohibited transaction, Trustees also request the Court to grant the relief requested in paragraph 34 hereinabove.

## FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT – MASTER LABOR AGREEMENT and

## NATIONAL DISTRIBUTION AGREEMENT

## (Against NPL)

61.     Trustees hereby incorporate herein by this reference paragraphs 1 through 60 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

62.     Trustees are informed and believe, and based thereon allege, that amounts due as union dues and association fees and related amounts (excluding employer and

1162987

1  employee contributions) are not plan "assets" and, accordingly, are not recoverable

2  under ERISA.

3       63.     The Master Agreement and the National Distribution Agreement require

4  NPL to pay to Trustees, for the benefit of District Council 16, its affiliated local unions,

5  and the Piping Industry Progress Education & Trust Fund (hereinafter "PIPE"), certain

6  amounts for each hour worked by NPL's employees performing work covered by the

7  Master Agreement and National Distribution Agreement.  Trustees are the assignee of

8  District Council No. 16, its affiliated local unions, and PIPE for collecting said hourly

9  contributions.  Trustees are informed and believe, and based thereon allege, that for the

10 time period of July 1, 2013, through May 31, 2017, NPL has failed to pay amounts due

11 under the Master Agreement and National Distribution Agreement to Trustees for the

12 benefit of District Council 16, its affiliated local unions, and PIPE, in the amount of at

13 least $513,856.51.  The total amount shall be established by proof at the trial herein.

14      64.     NPL owes the Trustees interest at the legal rate on all said hourly

15 contributions due under the Master Agreement and National Distribution Agreement to

16 Trustees for the benefit of District Council 16, its affiliated local unions, and PIPE from

17 the date said hourly contributions became due until the date said hourly contributions

18 are paid, in amounts to be established by proof.

### SIXTH CAUSE OF ACTION

### CONVERSION

### (Against NPL and DOES)

22      65.     Trustees hereby incorporate herein, by this reference paragraphs 1 through

23 64 above, inclusive of any and all subparagraphs, to the same effect as if set forth

24 verbatim.

25      66.     Under California law, conversion is defined to be an act of willful

26 interference with personal property, done without lawful justification, by which any

27 person entitled thereto is deprived of the use and possession of the personal property.

28 ///

67.     Trustees are informed and believe, and based thereon allege, that one or more or all of defendants converted within the past three (3) years union dues, association fees and related amounts totaling at least $513,856.51.

68.     Trustees are informed and believe, and based thereon allege, as a proximate result of the wrongful acts herein alleged, the Trusts have been damaged and that all amounts will be established by proof at trial herein.

69.     Trustees are informed and believe, and based thereon allege, that the aforementioned conduct of NPL and DOES were intentional acts, or omissions, known to same defendants or undertaken by same defendants with the intention on the part of the same defendants of thereby depriving the Trusts, the union, the participants and/or beneficiaries of monies or otherwise causing injury, and was despicable conduct that subjected the Trusts, the union, the participants and/or beneficiaries to a cruel and unjust hardship in conscious disregard of their respective rights, so as to justify an award of exemplary and punitive damages.

## **PRAYER**

**WHEREFORE**, the Trustees pray for judgment as follows:

1.     For unpaid fringe benefit contributions and other damages for breach of contract in the amount of at least $843,834.64, with the total amounts as proved;

2.     For liquidated damages in amounts as proved;

3.     For late fees in amounts as proved;

4.     For interest at the rate of eighteen percent (18%) per annum, or other applicable legal rate, on all amounts due from their respective due dates until paid;

5.     For exemplary and punitive damages in amounts as proved;

6.     On Trustees' claim for conversion only, for damages in the amount of at least $513,856.51 and additional amounts as proved, and for exemplary and punitive damages in amounts proved at the time of trial;

7.     For Trustees' audit costs in amounts as proved;

8.     For Trustees reasonable attorneys' fees in amounts as proved;

9.     For costs of suit incurred herein; and

10.    For such additional relief as this Court deems just and proper, including, but not limited to, the following:

10.1   An Order directing defendants, his/its/their representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

10.2.  An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Trusts; and

10.3.  An Order directing defendants, his/its/their representatives, agents and associates, to pay to the Trusts all amounts due the Trusts, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.


Dated:  August 21, 2017          LAQUER, URBAN, CLIFFORD & HODGE LLP


By:  _/s/ Marija Kristich Decker_
      Marija Kristich Decker
      Counsel for Plaintiffs, Trustees of the Southern
      California Pipe Trades Health and Welfare Trust
      Fund, et al.

COMPLAINT

1162987